### STATE v. FAILE.

1. FACTS—ON APPEAL FROM A SENTENCE in the Court of General Sessions, questions of fact cannot be considered by this court.

2. DYING DECLARATIONS were properly received in evidence in this case, as the deceased made such declarations when *in extremis*, and fully aware of his condition, having no hope of recovery, and as they related to his death and the circumstances of his killing.

3. INDICTMENT—AMENDMENT—WAIVER.—If it be that an indictment cannot be amended by order of court, so as to add *alias* names to the deceased in addition to that named in the indictment as found by the grand jury, because that an amendment so made would violate the constitutional rights of the accused, nevertheless such right is for the protection of the prisoner, and may be waived by him, and is so waived where the amendment is made with the consent of his counsel, who also state, during the progress of the trial, in the prisoner's presence, that they make no question as to the name of the deceased, and the *alias* names are used by witnesses in the case.

4. UNCOMMUNICATED THREATS.—When the plea of self-defence is relied on, and there is conflict of testimony as to who was the aggressor in bringing about the difficulty, uncommunicated threats made by the deceased against his slayer, while not competent evidence to show the *quo animo* of the prisoner, are competent to show the attitude of the deceased towards him.[1]

Before GARY, J., Lancaster, October, 1893.

Indictment against John A. Faile and others for murder. Upon his conviction, John A. Faile moved on the minutes for a new trial on the following grounds:

I. That the verdict of guilty as to John A. Faile was against the preponderance of evidence. II. Upon after-discovered evidence material to the issue, supported by affidavits herein included. III. That a witness, material to the defence, who was bound over and was in attendance on the first days of the term, was run off by threats of one Sowell, a witness for the prosecution, by reason of which his testimony could not be had. The fact having been found out after the beginning of the trial, and after it was too late to procure him (see affidavits on that point herein included), showing threats made by John L. Baker,

[1] See this subject discussed in note to Wilson *v.* State, 17 L. R. A., 654.

*alias* James L. Baker, *alias* Buster Baker, against John A. Faile, and communicated to him just before the homicide.    IV. That under the rules of evidence the so-called dying declaration of Baker, the deceased, should not have been received, and his honor ought so to have held.    (*a*) That Doctor Doster never told him (Baker) that he was *in extremis mortis*, but, on the contrary, told Jerry Funderburk, trial justice, who afterwards acted as coroner in the case, that he believed Baker would recover.    (*b*) That after the first supposed dying declaration of Baker, the said Jerry Funderburk, trial justice, commenced taking down the dying declarations of Baker in writing when he was *in extremis mortis*, and perhaps knew it, and was stopped by Dock Baker, brother of Baker, the deceased, and by Doctor Doster, Dock Baker saying, "Don't put it down, Mr. Funderburk; he is not telling it like he did before," or words to that effect, and the said Dock Baker and Doctor Doster stopped the trial justice from taking down anything more.

*Messrs. Ira B. Jones* and *Hough & Hough,* for appellant.

*Messrs. H. H. Newton* and *W. S. Blakeney,* contra.

January 9, 1895.  The opinion of the court was delivered by

MR. JUSTICE GARY.   At the October (1893) term of the Court of General Sessions for Lancaster County, the defendant, John A. Faile, with William C. Faile and Dunbar Robertson, was tried for the murder of John L. Baker, *alias* James L. Baker, *alias* Buster Baker.   The jury acquitted William C. Faile and Dunbar Robertson, but found the defendant, John A. Faile, guilty, who was thereupon sentenced to be hanged on the 12th day of January, A. D. 1894.

At a previous term of said court, an order was granted appointing H. H. Newton and W. S. Blakeney, Esqs., solicitors to prosecute this case, in the place of M. J. Hough, solicitor, who was disqualified by reason of having been paid a retainer fee by the defendants, before he was elected solicitor.   In the indictment as found by the grand jury, the deceased was described as "John L. Baker."   At the commencement of the trial, H. H. Newton and W. S. Blakeney, acting solicitors,

amended the indictment by adding after the words "John L. Baker" the words "*alias* James L. Baker, *alias* Buster Baker," without sending the indictment back to the grand jury. The following entry appeared upon the sessions journal during the October (1893) term of said court: "Before the grand jury was discharged, Messrs. Newton & Blakeney, acting solicitors in the case of The State, *v.* John A. Faile, William C. Faile, and Dunbar Robertson, arose and announced to the court that, with the consent of Messrs. Hough & Hough, attorneys for the defence in said case, they would amend the indictment in said case by inserting after the name of John L. Baker, wherever the same appears in said indictment, the words '*alias* James L. Baker, *alias* Buster Baker.' Messrs. Hough & Hough being present and consenting, it was ordered that the indictment be so amended."

A motion for new trial was made by the defendant, John A. Faile, upon several grounds, which will be set forth in the report of this case. The motion was refused. The defendant, John A. Faile, appealed to this court on the grounds stated in his motion for a new trial, and on the additional ground: "That the indictment as found by the grand jury contained the name of John L. Baker alone as having been murdered by John A. Faile, Wm. C. Faile, and Dunbar Robertson, and the *aliases*, to wit: the words '*alias* James L. Baker, *alias* Buster Baker,' were inserted in the indictment in open court after said finding of the grand jury, and without warrant of law." Also, upon the additional ground that his honor, the presiding judge, erred in excluding testimony as to the alleged uncommunicated threats by the deceased (this court upon motion having allowed the defendant, *in favorem vitæ*, to except to the ruling).[1]

Appellant's attorneys did not argue the first, second, and third grounds. There is nothing in the case showing that any questions but those of fact are involved in them, and, under the numerous decisions in this State, can not, therefore, be reviewed by this court. The first three exceptions are overruled.

The fourth exception raises the question as to the admissibil-

[1] See 41 S. C., 551.

ity of the dying declarations. The rule governing the admissibility of dying declarations is stated by Chief Justice McIver in *State* v. *Banister*, 35 S. C., 290, as follows: "To render these declarations admissible, it was only necessary that the trial judge should be satisfied: 1st. That the death of deceased was imminent at the time the declarations were made. 2d. That the deceased was so fully aware of this as to be without hope of recovery. 3d. That the subject of the charge was the death of the declarant, and the circumstances of the death was the subject of the declarations."

There was in this case a compliance with all these requirements. The deceased was shot on Sunday night, and died the succeeding Monday night, only surviving after the difficulty about twenty-four hours. He was wounded by two balls. One went directly through the upper part of the thigh, striking the femur; the other ball glanced off the crest of the illium, curved, and came through the intestines, and through the left lobe of the liver, striking against the ninth rib on the same side, and falling down in the cavity of the bowels. The last mentioned was the fatal ball. The doctor was asked: "Well, doctor, what have you to say about the cause of death on that man whom you examined?" He answered: "Well, that ball that made that curve was the fatal ball. It penetrated the bowels in several places, and went through the lower left lobe of the liver, which would have been necessarily fatal. I found the contents of the bowels all loose in the cavity when I cut into it; I found the contents of the bowels all run out, and the mesenteric membranes were wounded."

The dying declarations were made on the night of the homicide. The doctor testified that the mind of the deceased was clear, and he said he was killed. Doc. Baker, his brother, testified that he said, "Doc., I hate to tell you, I am bound to die;" also, that the deceased said he was shot in the bowels, and that Buster had no hope of recovery. A. F. Harris testified that Buster said he was a dying boy, and could not live. E. J. Lowry testified that he heard deceased say he was a ruined boy, and was bound to die. Deceased said to George Huntington, "George, I am bound to die, I am bound to die, I am

killed." The deceased stated that night that John. A. Faile shot him, and gave the details as to the shooting. There was some testimony as to the conduct of the deceased next day when he appears to have been in a sinking condition, but we do not regard it as material. This exception is, therefore, overruled.

We will next consider the exception relative to the amendment of the indictment. Section 13, article I., of our Constitution provides: "No person shall be held to answer for any crime or offence, until the same is fully, fairly, plainly, substantially, and formally described to him; or be compelled to accuse or furnish evidence against himself; and every person shall have a right to produce all proofs that may be favorable to him, to meet the witnesses against him face to face, to have a speedy and public trial by an impartial jury, and to be heard in his defence by himself or by his counsel, or by both as he may elect." Section 19, article I., provides that "No person shall be held to answer for any higher crime or offence unless on presentment of a grand jury, except in cases arising in the land and naval service, or in the militia, when in actual service in time of war or public danger."

The court in the case of *State* v. *Blakeney*, 33 S. C., 111, uses this language: "If the indictment had been defective in the particular alleged by the appellant, to wit: in failing to state the place or the death of the deceased, then we think the grounds of appeal would demand a reversal of the judgment below. We suppose that it can hardly be necessary to cite authority to the fact that it is absolutely essential in an indictment like that here, that the place of the death of the party killed should be alleged therein, and that, in the absence of such allegation, such indictment is fatally defective, and should be quashed on motion made; and we think, further, that such a defective indictment is beyond the reach of amendment. True, under section 5 of the act of 1887, 19 Stat., 830, much of the useless phraseology which characterized indictments in former times may be dispensed with, and omissions of mere forms may be cured by amendments; but this act has neither dispensed with essential allegations nor has it attempted to cure their

omissions by allowing amendments to that end. Indeed, we may say that we do not think that the General Assembly would have the power to provide for the amendment of indictments to the extent claimed here, and in a matter so vital as the place of the death of the party killed, which is absolutely necessary to be alleged, in a jurisdictional point of view, and must be passed upon by the grand jury, in accordance with the constitutional rights of the accused. We do not think, therefore, that the act in question was intended to reach thus far. We concur, too, in the position that, had the indictment been defective in the matter complained of, that it would have been error to have allowed the trial to proceed on the indictment as amended, because, as contended, this would have jeopardized the accused upon an indictment not found by the grand jury, and in violation of his constitutional rights. So, too, for the same reason, there would have been error in refusing the motion in arrest of judgment." This principle is also sustained by the cases of *Ex parte Bain*, 121 U. S., 1, and *Commonwealth* v. *Maher*, 16 Pick., 120.

The question in this case, however, is not whether such amendment is against the constitutional right guaranteed to the prisoner for his protection, but whether he has *waived* his right to insist upon such constitutional provision. These provisions of the Constitution are for the protection and benefit of the prisoner, and can be *waived* by him when, in his judgment, it is to his advantage to do so. Herman on Estoppel and Res Judicata, vol. 2, p. 954, says: "Waiver is voluntary, and implies an election to dispense with something of value, or forego some advantage which the party waiving it might at his option have demanded or insisted upon. A waiver takes place where a man dispenses with the performance of something which he has a right to exact. A party may waive a constitutional as well as a statutory provision for his benefit, as a trial by jury, though that mode is guaranteed to him by the Constitution; and when waived by such party, he will be estopped from setting them up or claiming them." The same author, at page 958, says: "A defendant has a constitutional right to a speedy trial, yet he may waive this provision by obtaining a continu-

ance.   He may plead guilty, which generally dispenses with a jury trial, and it is thereby waived."

Although the Constitution confers upon the accused the right to meet the witnesses against him face to face, it is an unquestioned practice for the accused to waive such right, and consent to the introduction in evidence of testimony taken upon a former trial.   The Constitution confers upon the prisoner the right to be tried by an impartial jury, yet he waives such right by failing to object at the proper time.   In the case of *State* v. *Stephens*, 11 S. C., 319, the court, in speaking of objections to the drawing, summoning, and empanelling of the petit jury, says: "It is too late to allege such defects either in the panel or in individual jurors, after the swearing of the jury," citing a number of authorities.

The case of *State* v. *Thompson*, Cheves, 31, shows that objection to a defective indictment may be waived by failing to interpose such objection at the proper time.   In that case the court quotes with approval the following rule from 1 Chit. Cr. L., 202, to wit: "The name and addition of the party indicted ought regularly to be truly inserted in every indictment; but whatever mistake may be made in these respects, if the defendant appears and pleads not guilty, he cannot afterwards take advantage of the error."   The court then proceeds as follows: "It was observed that there was no hardship in the rule, for the prisoner lost no advantage or privilege by it on his trial, and if he had need afterwards to resort to a plea of *antrefois convict*, he would be allowed to show that he was the same person heretofore convicted by the name of William Foster."   The syllabus of the case of *State* v. *Quarrel*, 2 Bay, 150, in which the accused was convicted of murder, is as follows: "If an alien is drawn and empanelled as a juror, it is a good cause of challenge before trial, but if permitted to be sworn by the prisoner, it is too late after trial and conviction to make it a ground for a new trial."   It might work a great hardship on the prisoner not to be allowed to waive even a constitutional right.   He may be influenced to consent to such waiver because his witnesses are present, and he may fear that he will not be able to secure their attendance at a future term of the court, or he

may prefer to have his case tried by the jurors at that term of the court, or he may be influenced to such action by numberless other considerations.

Mr. Justice Brewer, in speaking for the court in the case of *In re Wilson*, 140 U. S., 575, uses the following language in meeting an objection to the alleged unconstitutionality of the grand jury, which found a true bill on the indictment under which the prisoner was convicted: "Indeed, it may be considered doubtful, at least, whether such defect is not waived, if not taken advantage of before trial and judgment. In the case of *United States* v. *Gale*, 109 U. S., 65, a question as to the competency of the grand jury was presented for the first time on a motion in arrest of judgment, and from the decision of the trial court came to this court on a certificate of division. The objection was that in the organization of the grand jury the court, under the authority of section 820, Revised Statutes, excluded from the panel persons otherwise qualified, who voluntarily took part in the rebellion. The unconstitutionality of this section was asserted, but this court declined to pass upon that question, holding that the defendants, by pleading to the indictment and going to trial without making any objection to the grand jury, waived any right of subsequent complaint on account thereof. Mr. Justice Bradley, delivering the opinion of the court, reviews the authorities at length, and shows that they clearly sustain the conclusion announced. The opinion is carefully guarded, and does not reach to the precise question here presented, but its implication and the drift of the authorities referred to is that a defect in the constitution or organization of a grand jury, which does not prevent the presence of twelve competent jurors, by whose votes the indictment is found, and which could have been cured, if the attention of the court had been called to it at the time, or promptly remedied by the empanelling of a competent grand jury, is waived if the defendant treats the indictment as sufficient, pleads not guilty, and goes to trial on the merits of the charge. There is good sense in this conclusion. The indictment is the charge of the State against the defendant, the pleading by which he is informed of the fact, and the nature and scope of the accusation.

When that indictment is presented, that accusation made, that pleading filed, the accused has two courses of procedure open to him. He may question the propriety of the accusation, the manner in which it has been presented, the source from which it proceeds, and have these matters promptly and properly determined, or, waiving them, he may put in issue the truth of the accusation, and demand the judgment of his peers on the merits of the charge. If he omits the former and chooses the latter, he ought not, when defeated on the latter, when found guilty of the crime charged, to be permitted to go back to the former, and inquire as to the manner and means by which the charge was presented"—citing an array of authorities.

The facts in this case show that not only was the waiver made by the prisoner's attorneys at the commencement of the case, but when Dr. Doster was on the stand, he was asked: "What other name besides Buster did he have?" Answer: "I think he signed his name J. L. Baker." "You don't know whether it was James or John?" Answer: "No, sir." Mr. Hough: "We make no question as to his name." The prisoner must necessarily have been present when this statement was made, and yet no objection was interposed. The deceased was called "John Baker" in the affidavit of Fannie Hair, used by the prisoners in their application for bail. The deceased was called "John L. Baker" in the testimony of Dunbar Robertson. In cross-examining Fannie Hair, she is questioned as to "John Baker" by defendant's attorney. The prisoner has in no way been prejudiced by the amendment, and this exception is overruled.

The last exception raises objection to the ruling of the trial judge in regard to uncommunicated threats made by the deceased. In the case of *State* v. *Bodie*, 33 S. C., 130, the court says, that there may be cases in which uncommunicated threats might be competent, and cites *Wiggins* v. *Peoples*, 93 U. S., 465. In that case the court says: "Although there is some conflict of authority as to the admission of threats of the deceased against the prisoner in case of homicide, where the threats had not been communicated to him, there is a modification of the doctrine in more recent times, established by

the decisions of courts of high authority, which is very well stated by Wharton in his work on Criminal Law, section 1027: 'Where the question is as to what was deceased's attitude at the time of the encounter, recent threats may become relevant to show that this attitude was one hostile to the defendant, even though such threats were not communicated to defendant. The evidence is not relevant to show the *quo animo* of the defendant, but it may be relevant to show that at the time of the *meeting*, the deceased was seeking defendant's life.'" In *People v. Scoggins*, 37 Cal., 677, the rule is well expressed as follows: "If a deadly encounter occurs between two persons, in which one is killed, and if the survivor claim that he acted in self-defence, the evidence of those who witnessed the transaction may leave it in doubt which of the two was the assailant. There may even be very slight proof that the deceased was the aggressor, and yet, if it be established that, shortly before the affray, the deceased armed himself with a deadly weapon, declaring with apparent sincerity and earnestness that he had procured it with a fixed determination to take the life of his adversary on sight, it cannot be denied that this would tend in some degree to corroborate whatever other evidence there was tending to show that the deceased was the assailant. Of itself and unsupported by other facts, it might and probably would be deemed wholly insufficient to establish the fact proposed. Nevertheless, it would constitute an item of proof tending, it might be slightly but still in some degree, toward the conclusion proposed to be established. The weight to be attached to it is for the jury to consider, in connection with the other proofs, and it would be the duty of the court to explain to the jury carefully, that the proof was admitted only as tending to corroborate whatever other evidence there was that the deceased was the assailant, and for no other purposes. It is alleged, however, that in this case there was an entire absence of proof that the deceased was the assailant, and that evidence of the previous threats ought not to be admitted, because there was, in fact, no proof whatever that the defendant acted in self-defence. But without attempting to analyze the proofs, it is enough for us to say on this point, that Mrs. Lowery was the

only witness immediately present at the time of the rencontre, and, though she testified she had the pistol in her lap at the moment when her husband was shót, and had not parted with it from the time when she received it from Crouch, it was for the jury to decide upon her credibility."

In the case of *Little* v. *State* (Tenn., 9 Bax., 573), reported in Cases of Self-Defence, by Horrigan & Thomson, at page 490, this language is used: "The prisoner offered proof of other threats made against him by the deceased, but which had not been communicated to the prisoner, and the proof was likewise rejected. The true rule upon this question we apprehend to be this: previous threats of the deceased communicated to the prisoner, tend to show the state of mind of the prisoner, the apprehension under which he was acting, and tend to illustrate his conduct and motives, in connection with the other facts and circumstances of the case. Previous threats of the deceased against the prisoner, *but not communicated to him,* do not furnish the same evidence of the motives brought to bear upon the prisoner's mind, and are not admissible for the same purpose. But in all cases where the acts of the deceased in reference to the fatal meeting are of a doubtful character, then evidence which may tend to show that he sought the meeting, or began or provoked a combat, is admissible. And, in this view, previous threats by the deceased, though not communicated to the prisoner, may yet tend to show the *animus* of the deceased, and to illustrate his conduct and motives, and in some cases might be important in the absence of more direct evidence to show which party began or provoked the fight. Threats of this character are, in proper cases, admissible, but for a different purpose from the former class of cases," citing quite a number of authorities.

This principle is also discussed with approval in the cases of *Stokes* v. *People,* 53 N. Y., 174; *Keener* v. *Georgia,* 18 Ga., 194; *Campbell* v. *People,* 16 Ill., 18; *Holler* v. *State,* 37 Ind., 57; *People* v. *Arnold,* 15 Cal., 476. When the plea of self-defence is relied upon, and there is conflict of testimony as to who was the aggressor in bringing about the difficulty, uncommunicated threats made by the deceased against his slayer are competent

evidence to show the attitude of the deceased toward the prisoner, but not for the purpose of showing the *quo animo* of the *prisoner*.

The testimony of Dunbar Robertson was to the effect that the deceased made the first assault upon the defendant, John A. Faile, at the time of the homicide. After he testified, the defendant's attorneys attempted to prove by the witness, Hennie Craig, that about two weeks before the homicide, when the deceased was loading his pistol, he made threats against the parties indicted for the murder of the deceased, when he heard them making a boisterous noise up the road toward Taxahaw. The presiding judge ruled as follows: "Q. (By attorney:) What did he say? (Mr. Solicitor objects to the declarations of Buster Baker.) The Court: I think if the threats were communicated to one of the defendants, it would be competent. Q. (By attorney:) Did you tell anybody about it? (Mr. Solicitor objects upon the ground that unless the threat was known throughout the community, it is not competent.) The Court: Unless the threat that was made was generally known throughout the community, it is not competent."

Although there are cases sustaining the ruling of the presiding judge, we prefer to adopt the rule announced in the cases from which we have quoted. We, therefore, think there was error in excluding testimony as to the uncommunicated threats.

It is the judgment of this court, that the judgment of the Circuit Court be reversed, and that the cause be remanded to the Circuit Court for a new trial.