706 S.E.2d 16

**The STATE, Respondent,**

v.

**Ronald J. SHEPPARD, Appellant.**

No. 26927.

Supreme Court of South Carolina.

Heard Nov. 16, 2010.

Decided Feb. 7, 2011.

---

O. Grady Query and Michael W. Sautter, both of Query Sautter Gliseman & Pric, of Charleston, for Appellant.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Chief, Prosecution Division Jennifer D. Evans, and Assistant Attorney General William M. Blitch, Jr., all of Columbia, for Respondent.

Chief Justice TOAL.

In this case, Ronald J. Sheppard, the former CEO of HomeGold Financial, Inc. (HomeGold), was charged with securities fraud, obtaining property under false pretenses, and conspiracy. He was found guilty on all three charges and sentenced to a total of twenty years imprisonment. Sheppard appeals, seeking either to have his convictions vacated, or to have his sentences vacated and remanded for resentencing, arguing: (1) he was denied a fair trial because of a third party's contact with a juror; (2) the state grand jury lacked subject matter jurisdiction over the counts of obtaining property under false pretenses and conspiracy; (3) section 14–7–1820 of the South Carolina Code violates the constitutional prohibitions against ex post facto laws; and (4) the circuit court abused its discretion by imposing a sentence disproportionate to those of his co-conspirators.

## Facts/Procedural Background

This case stems from the financial collapse and ultimate bankruptcy of HomeGold, a financial services company heavily involved with subprime mortgages. Carolina Investors, Inc. originally financed the sale of cemetery plots, but later expanded into other lending. Carolina Investors was ultimately purchased by another company, which took over Carolina Investors' lending operations. Carolina Investors continued to sell debt instruments, but the money it raised went to fund the operation of its parent company, primarily through a

series of intercompany loans. In 1998, the parent company began losing money, became a publicly traded company, and changed its name to HomeGold Financial, Inc. HomeGold began losing hundreds of millions of dollars and its indebtedness to Carolina Investors continued to grow. In an effort to stabilize the company, HomeGold merged with HomeSense, Sheppard's subprime mortgage lending business, and Sheppard became its CEO. After several years of financially abusing the company, Sheppard resigned his position with HomeGold to create a new company to buy HomeGold's mortgage business. Shortly thereafter, HomeGold filed for bankruptcy.

In November 2005, a state grand jury indicted Sheppard on eleven charges stemming from his involvement with the mishandling of HomeGold's business and financial operations. The circuit court granted Sheppard's motion to dismiss eight of the eleven charges. Sheppard was found guilty and sentenced for the three remaining charges, with the sentences to run consecutively: (1) securities violation, ten years; (2) obtaining property by false pretenses, five years; and (3) conspiracy, five years.

## Issues

Sheppard presents the following issues for review:

I. Was Sheppard deprived of his constitutional right to a fair trial before an impartial jury when a spectator made contact with a juror in an elevator?

II. Did the state grand jury have subject matter jurisdiction over the counts of obtaining property by false pretenses and conspiracy?

III. Does section 14–7–1820 of the South Carolina Code violate the constitutional prohibitions against the passage of *ex post facto* laws?

IV. Did the circuit court abuse its discretion by imposing a sentence on Sheppard that was substantially greater than the sentences of the coconspirators?

## Standard of Review

In criminal cases, the appellate court sits to review errors of law only. *State v. Baccus*, 367 S.C. 41, 48, 625

S.E.2d 216, 220 (2006). The conduct of a criminal trial is left largely to the sound discretion of the trial judge, who will not be reversed in the absence of a prejudicial abuse of discretion. *State v. Bridges*, 278 S.C. 447, 448, 298 S.E.2d 212, 212 (1982).

ANALYSIS

## I. Contact with Juror

Sheppard argues that a spectator's contact with a juror deprived him of a fair and impartial trial because the circuit court judge failed to cure the resulting prejudice. We disagree.

Sheppard invokes the Sixth and Fourteenth Amendments of the United States Constitution in his conclusory argument that he was denied a fair trial by a spectator's comment to a juror in an elevator, and by the circuit court judge's failure to remedy any resulting prejudice. The comment itself is not in the record, and the only information about the comment is found when the circuit court judge addresses the jury:

> Madam Forelady and ladies and gentlemen of the jury, hope you had a good weekend. For the juror who reported an inappropriate comment on the elevator on Thursday, I appreciate that, I will deal with that and thank you for making that report.

Sheppard contends the judge was required to ensure Sheppard received a fair and impartial trial by interviewing the juror to ascertain the extent of any potential prejudice and by giving the entire jury a curative instruction, even in the absence of any objection or motion by defense counsel. He argues not only that the circuit court was required to address the issue without motion or objection, but also that this Court may reach the unpreserved issue because the issue is "absolutely essential to a fair trial" and resolving the question now is in the interest of judicial economy.

First, Sheppard has not properly preserved this issue for appellate review. After the judge addressed the jury regarding the comment, Sheppard made no motion or objection; instead, he immediately began cross-examining a witness. Our law is clear that a party must make a contemporaneous objection that is ruled upon by the trial judge to

preserve an issue for appellate review. *State v. Johnson*, 363 S.C. 53, 58, 609 S.E.2d 520, 523 (2005). This rule also applies to constitutional arguments. *See State v. Owens*, 378 S.C. 636, 638, 664 S.E.2d 80, 81 (2008) (finding constitutional claims not preserved for review without a contemporaneous objection at trial).

■ Second, aside from the preservation problem, Sheppard is clearly arguing for this Court to apply the plain error rule. While Sheppard does not use the phrase "plain error," he states that the circuit court judge had the obligation to investigate and cure any potential prejudice even without objection or motion from defense counsel. This Court, however, has routinely held the plain error rule does not apply in South Carolina state courts. *See Jackson v. Speed*, 326 S.C. 289, 306, 486 S.E.2d 750, 759 (1997) (recognizing South Carolina appellate courts have consistently refused to apply the plain error rule). Instead, a party must have a contemporaneous and specific objection to preserve an issue for appellate review. *Johnson*, 363 S.C. at 58, 609 S.E.2d at 523. Thus, Sheppard's argument that a judge commits an abuse of discretion by not *ex mero motu* [1] addressing an issue at trial is not supported by our case law. Therefore, because Sheppard has not preserved this issue for review and because this Court does not apply the plain error rule, his argument fails.

## II. State Grand Jury's Indictment

■ Sheppard argues the state grand jury did not have subject matter jurisdiction over the counts of obtaining property under false pretenses and conspiracy, and therefore his convictions should be vacated. We disagree.

Sheppard cloaks his argument as subject matter jurisdiction, but he is actually challenging the sufficiency of the indictment when he argues the state grand jury did not have jurisdiction over the counts of obtaining property under false pretenses and conspiracy. He contends section 14–7–1630 of the South Carolina Code does not specifically include these charges, and that these charges are not related to the securi-

---

1. *Ex mero motu* is a synonym for *sua sponte*. *State v. Dicapua*, 383 S.C. 394, 398 n. 3, 680 S.E.2d 292, 294 n. 3 (2009) *(citing* Black's Law Dictionary 596 (7th ed.1999)).

ties violations that are expressly included in the grand jury's jurisdiction. For this reason, he argues, he could not have been properly charged with these crimes, and the circuit court consequently lacked subject matter jurisdiction to convict him.

Certainly, issues relating to subject matter jurisdiction may be raised at any time. *State v. Gentry*, 363 S.C. 93, 100, 610 S.E.2d 494, 498 (2005). In *Gentry*, this Court clarified that a court's subject matter jurisdiction is that court's power "to hear and determine cases of the general class to which the proceedings in question belong." *Id.* Further, the sufficiency of an indictment is a question separate from and does not implicate subject matter jurisdiction. *Id.* at 101, 610 S.E.2d at 499. Thus, this Court held that if an indictment is challenged as insufficient or defective, that challenge must be raised before the jury is sworn. *Id.*

Here, there is no question that the circuit court has subject matter jurisdiction over the crimes charged. *See* S.C. Const. art. V, § 11 ("The Circuit Court shall be a general trial court with original jurisdiction in civil and criminal cases. . . .") Despite Sheppard's phrasing and denial, he is challenging the sufficiency of the indictment when he claims the state grand jury could not consider the counts of obtaining property under false pretenses and conspiracy. As explained in *Gentry*, any challenge to the sufficiency of the indictment must be made before the jury is sworn. *Id.* at 101, 610 S.E.2d at 499. While Sheppard did timely file a motion to quash the indictment, he only challenged eight of the eleven counts, conceding the counts upon which he was ultimately convicted were within the limited subject matter jurisdiction of the state grand jury. Therefore, Sheppard mischaracterizes his argument as one of subject matter jurisdiction. Further, because he failed to timely challenge these counts in the indictment and instead went to trial on the charges, he cannot now, having lost at trial, come back to challenge the sufficiency of the indictment. *See Gentry*, 363 S.C. at 102, 610 S.E.2d at 499–500 *(quoting State v. Faile*, 43 S.C. 52, 59–60, 20 S.E. 798, 801 (1895)).

Further, we disagree with the substance of Sheppard's argument that the statute granting the state grand jury authority over securities violations does not encompass the

crimes of obtaining property by false pretenses and conspiracy. While the statute establishing the jurisdiction of the state grand jury plainly evidences the General Assembly's intent to limit said jurisdiction, we do not believe it intended to hinder the grand jury's ability to investigate and indict for crimes committed in the course of conduct of an enumerated crime. *See* S.C.Code Ann. § 14–7–1630 (Supp.2009). Subsection 7 of the statute grants jurisdiction to the state grand jury over "a crime involving a violation of Chapter 1, Title 35 of the Uniform Securities Act, or a crime related to securities fraud or a violation of the securities laws." *Id.* § 14–7–1630(7). We find the language "or a crime related to" is broad enough to encompass those crimes committed in the same course of conduct as an enumerated crime. Thus, the state grand jury has jurisdiction over the charges of obtaining property by false pretenses and conspiracy, even though those specific crimes may not be enumerated elsewhere in section 14–7–1630, because they were committed in the same course of conduct as the securities violations.

### III. Section 14–7–1820 and the Ex Post Facto prohibition

 Sheppard argues section 14–7–1820 of the South Carolina Code is an unconstitutional ex post facto law. However, Sheppard has not preserved this issue for appellate review. It appears from the record this argument is being made for the first time on appeal. Our law is clear than an issue may not be raised for the first time on appeal. *See I'On LLC v. Town of Mt. Pleasant,* 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000).

Section 14–7–1820 states, in its entirety, "This article applies to offenses committed both before and after its effective date." S.C.Code Ann. § 14–7–1820 (Supp.2009). Sheppard argues this section violates the constitutional prohibitions against the passage of ex post facto laws because section 14–7–1630 of the South Carolina Code, the section that describes the jurisdiction of the state grand jury, did not include jurisdiction over securities violations until it was amended in 2003 in response to the HomeGold financial disaster. Sheppard argues that because the amendment was an ex post facto law, it is unconstitutional and that section of the statute is void. Therefore, he argues, because that unconstitutional section

was the only grant of authority to the state grand jury over securities violations, the state grand jury did not have subject matter jurisdiction over the counts in the indictment, and his convictions should be vacated. This argument, however, is again a thinly veiled attempt to reach subject matter jurisdiction because Sheppard has not preserved his ex post facto argument for appellate review. *See Gentry*, 363 S.C. at 101, 610 S.E.2d at 499 (a challenge to the indictment must be made before the jury is sworn).

## IV. Disproportionate Sentence

Sheppard argues the circuit court erred in sentencing him to twenty years total imprisonment because his sentence was disproportionately greater than those of his co-conspirators. This argument, however, was not raised to the trial judge; therefore, the issue is not preserved for appellate review. *See State v. Johnston*, 333 S.C. 459, 462, 510 S.E.2d 423, 425 (1999) ("[T]his Court has consistently held that a challenge to sentencing must be raised at trial, or the issue will not be preserved for appellate review.") (citations omitted).

### CONCLUSION

For the foregoing reasons, the circuit court's conviction and sentence are affirmed.

PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.