Chief Justice TOAL.
Curtis Simms (Appellant) appeals his conviction for high and aggravated breach of the peace, and resulting sentence. We affirm.
Factual/Procedural History[1]
This case arises out of the tragic death of a young man, Martin Gasque (the victim), outside of Williams-Brice Stadium following the University of South Carolina football game against the University of Alabama in October 2010. Both Appellant and the victim tailgated near the stadium during the football game, and both were intoxicated as they left the area. Appellant, wearing an Alabama jersey, left the tailgate with friends, riding as the front-seat passenger in a green truck driven by a friend, Dustin Lindsey. Lindsey attempted to exit the tailgate parking lot by turning right onto Shop Road.[2] The victim — an avid Gamecock fan — was the front-seat passenger in a black truck driven by his friend Adam Paxton, and was boisterously engaging Gamecock fans through his open window as Paxton inched down Shop Road in the “bumper-to-bumper” traffic.
The two trucks and passengers crossed paths when the black truck blocked the green truck from exiting the parking lot. Lindsey blew his horn. In response, the victim threw up *593 his hands, as if to indicate that he was sorry for blocking Lindsey’s entry into the roadway. Appellant exited the green truck and approached the black truck’s passenger side, where the victim was sitting. Appellant punched the victim once while he was seated in the truck, and then hit the victim four or five more times as he exited the black truck. The victim was knocked unconscious, and fell into the roadway parallel to the truck on the white line comprising the edge of the lane of traffic. After the victim hit the ground, Paxton began pulling his truck forward to the right in order to move the truck onto the shoulder of Shop Road and out of the roadway. As he did so, he unknowingly began to slowly roll over the victim between his legs, then over his groin, his abdomen, his chest, and finally, his head. Appellant yelled at Paxton to stop, and banged on the truck with his fists, but this only caused Paxton to accelerate.
The victim died at the scene after suffering a hinge fracture, an injury incompatible with life, which was caused by Paxton running over him.
Due to the fact that the death occurred in the roadway, police blocked both lanes of traffic for several hours. One eyewitness testified that the line of traffic was already “bumper-to-bumper,” and this incident “just added to it.” A responding Sheriffs deputy testified that a large crowd of people were present at the scene and it was “pretty chaotic.” Further, “pedestrians were everywhere,” and “[cjrowds of people were agitated with traffic problems” and were “just constantly ... berat[ing] the police.” Another Sheriffs deputy testified that due to the “gridlock,” “[it] took a while to get things moving.”
Appellant was charged with both aggravated breach of the peace and involuntary manslaughter. The jury returned a verdict of not guilty on the involuntary manslaughter charge, but found Appellant guilty of aggravated breach of the peace.
The trial court sentenced Appellant to ten years’ imprisonment, suspended upon the service of five years’ imprisonment and three years’ probation, but later reduced Appellant’s sentence to ten years’ imprisonment suspended upon the service of three years’ imprisonment, plus three years’ probation.
*594 Appellant subsequently filed a petition for a writ of habeas corpus, which this Court denied. However, we subsequently certified this appeal from the court of appeals pursuant to Rule 204(b), SCACR.
Issues
I. Whether the circuit court erred in refusing to direct a verdict of acquittal with respect to the aggravated breach of the peace charge?
II. Whether the trial court imposed an illegal sentence?
III. Whether the circuit court erred in refusing to admit certain eyewitness testimony?
Analysis

I. Directed Verdict

At trial, Appellant moved for a directed verdict on the breach of the peace indictment because his conduct in punching the victim did not “rise to the level suggested by our legislature for [the breach of the peace] charge to go forward.” The circuit court denied the directed verdict based upon the number of punches thrown by Appellant, the public nature of the incident, and the number of people who witnessed the fight. Appellant renewed his directed verdict motion at the close of his case on the same basis as his previous motion, and the trial court again denied the motion. On appeal to this Court, Appellant contends the trial court erred in denying his directed verdict because there is no evidence in the record to support the finding that there were aggravating circumstances. We find that the State presented evidence sufficient to withstand Appellant’s directed verdict motion with respect to the breach of the peace charge.
A breach of the peace is a common law offense. State v. Randolph, 239 S.C. 79, 121 S.E.2d 349 (1961). Encompassing a broad range of conduct, South Carolina courts have analyzed a breach of the peace over the centuries as a crime defying strict definition:
The term “breach of the peace” is a generic one embracing a great variety of conduct destroying or menacing public order and tranquility. In general terms a breach of peace is a violation of public order, a disturbance of the public *595 tranquility, by any act or conduct inciting to violence, which includes any violation of any law enacted to preserve peace and good order.
State v. Poinsett, 250 S.C. 293, 297, 157 S.E.2d 570, 571 (1967) (citation omitted); see also Randolph, 239 S.C. at 83, 121 S.E.2d at 350 (“Breach of the peace is a common law offense which is not susceptible of exact definition”). As noted by the court of appeals in State v. Peer:
Throughout the various definitions appearing in the cases there runs the proposition that a breach of the peace may be generally defined as such a violation of the public order as amounts to a disturbance of the public tranquility, by act or conduct either directly having this effect, or by inciting or tending to incite such a disturbance of the public tranquility. Under this general definition, therefore, in laying the foundation for a prosecution for the offense of breach of the peace it is not necessary that the peace actually be broken; commission of an unlawful and unjustifiable act, tending with sufficient directness to breach the peace, is sufficient.
320 S.C. 546, 552, 466 S.E.2d 375, 379 (Ct.App.1996) (citing 12 Am. Jur. 2d Breach of Peace & Disorderly Conduct § 4 (1964)). “Whether conduct constitutes a breach of the peace depends on the time, place, and nearness of other persons.” Id. (citing 3 S.C. Juris. Breach of Peace § 7 (1991)). However, despite including “acts likely to produce violence in others, actual violence is not an element of breach of peace.” Id. (citations omitted); see also State v. Langston, 195 S.C. 190, 11 S.E.2d 1 (1940).
Normally, a breach of the peace is a misdemeanor punishable in magistrate’s court by a fine “not exceeding five hundred dollars or imprisonment for a term not exceeding thirty days, or both-” S.C.Code Ann. § 22-3-560 (Supp.2013). When, however, the breach of the peace is deemed to be of a high and aggravated nature, the case may be “waived up” to the Court of General Sessions:
Magistrates may cause to be arrested (a) all affrayers, rioters, disturbers and breakers of the peace, (b) all who go armed offensively, to the terror of the people, (c) such as utter menaces or threatening speeches and (d) otherwise *596 dangerous and disorderly persons. Persons arrested for any of such offenses shall be examined by the magistrate before whom they are brought and may be tried before him. If found guilty they may be required to find sureties of the peace and be punished within the limits prescribed in § 22-3-560 or, when the offense is of a high and aggravated nature, they may be committed or bound over for trial before the court of general sessions.
S.C.Code Ann. § 22-5-150 (Supp.2013) (emphasis added); cf. id. § 22-5-110(A)(3) (Supp. 2013) (requiring a magistrate to “commit or bind over for trial those who appear to be guilty of crimes or offenses not within their jurisdiction”).
Thus, a simple breach of the peace is a common law offense defined in our precedents in broad terms. Where aggravating circumstances exist, however, the General Assembly has permitted a defendant to be prosecuted in circuit court, as happened here. See S.C.Code Ann. § 22-5-150. It makes no difference that the aggravators are not expressly defined by statute. Rather, the law only requires that a breach of the peace be “of a high and aggravated nature.” Thus, a wide variety of factual circumstances could render a simple breach of the peace triable in circuit court because of its “high and aggravated nature.”
Here Appellant was indicted for “Breach of Peace — High and Aggravated.”[3] The indictment states:
*597 That [Appellant] did in Richland County on or about October 9, 2010, knowingly, willfully and intentionally disturb public order and/or public tranquility through his conduct, accompanied by circumstances of aggravation, fighting in the roadway and/or disrupting traffic such acts constituting the offense of Breach of Peace in violation of the Common Law of South Carolina.
Considering the time, place, and nearness of others as required by Peer, we find that the trial court did not err in refusing to direct a verdict of acquittal regarding the aggravated breach of the peace charge, because the State presented evidence of aggravation. See State v. Cherry, 361 S.C. 588, 593, 606 S.E.2d 475, 478 (2004) (stating that in cases where the State has failed to present evidence of the offense charged, a criminal defendant is entitled to a directed verdict); (State v. Burdette, 335 S.C. 34, 46, 515 S.E.2d 525, 531 (1999)) (stating when reviewing a denial of a directed verdict, an appellate court must view the evidence and all reasonable inferences in the light most favorable to the state).
The fight and the victim’s subsequent death occurred in a public roadway immediately adjacent to Williams-Brice Stadium after a football game attended by a capacity crowd. At the time, thousands of fans were attempting to exit all corners of the stadium on foot and in vehicles. Moreover, the resultant melee caused previously slow-moving traffic to come to a *598 standstill for over two hours, as the fight occurred on a particularly busy thoroughfare. Further, many members of the public witnessed the victim’s death. Several witnesses testified to the extremely disturbing nature of the crime scene. Ultimately, Appellant’s direct involvement in the incident, which led to the victim’s unfortunate demise, contributed to the distress of many members of the community, and the general public upheaval that followed. Thus, Appellant’s actions exemplify the type of behavior constituting an aggravated breach of the peace.
Accordingly, we affirm the circuit court’s refusal to grant Appellant’s directed verdict motion.

II. Sentence

Appellant contends the maximum sentence he could have been subjected to for a conviction of aggravated breach of the peace in circuit court is thirty days, citing section 22-3-560 of the South Carolina Code. See S.C.Code Ann. § 22-8-560 (Supp.2013) (“Magistrates may punish by fine not exceeding five hundred dollars or imprisonment for a term not exceeding thirty days, or both, all breaches of the peace.”). We disagree.
Appellant relies on the language of section 22-3-560 that permits magistrates to punish “all breaches of the peace.” (Emphasis added). Specifically, Appellant argues that thirty days and $500 fine is the maximum sentence for any breach of the peace.
However, Appellant’s argument ignores the clear language of sections 22-5-150 and 22-5-110(A)(3), which suggest that once the defendant has been “waived up” to circuit court, the magistrate loses jurisdiction. Thus, while section 22-3-560 applies to all breaches of the peace tried in magistrate’s court, it does not affect sentencing in circuit court. Accordingly, because no sentence is specified for aggravated breach of the peace under our criminal law, section 17-25-30 of the South Carolina Code controls. See S.C.Code Ann. § 17-25-30 (Supp.2013). That section provides:
In cases of legal conviction when no punishment is provided by statute the court shall award such sentence as is conformable to the common usage and practice in this State, *599 according to the nature of the offense, and not repugnant to the Constitution.

Id.

Because Appellant’s sentence fell safely within the limits of section 17-25-30, we affirm the sentencing by the trial court. See, e.g., State v. Hill, 254 S.C. 321, 175 S.E.2d 227 (1970).

III. Evidentiary Ruling

Finally, Appellant contends the trial court erred in refusing to allow a witness who was riding in the car directly behind the victim to testify regarding his personal observations of the victim in the hour leading up to the fight. The witness would have testified that he saw the victim harass Alabama fans on foot as he rode past them in his vehicle and exit his vehicle to urinate in the roadway before the fight.
Appellant argues that the circuit court erred in excluding the witness’s testimony because it impeached other testimony elicited at trial that the victim was not acting in a disorderly fashion, and because it was “part of the fabric of the case.” Appellant was acquitted of the involuntary manslaughter charge, and whether or not the victim also engaged in a breach of the peace is irrelevant to Appellant’s indictment for high and aggravated breach of the peace, as the victims of a breach of the peace are members of the public. Because this evidence is irrelevant to the question of Appellant’s guilt for high and aggravated breach of the peace, we find any error in the circuit court’s refusal to admit the testimony was harmless.
Accordingly, we affirm the circuit court’s decision to exclude this testimony. See State v. Gaster, 349 S.C. 545, 557, 564 S.E.2d 87, 93 (2002) (stating the admission or exclusion of evidence rests in the sound discretion of the trial judge, and will not be reversed on appeal absent an abuse of discretion (citation omitted)); see also State v. Kelley, 319 S.C. 173, 176, 460 S.E.2d 368, 370 (1995) (“A trial judge has considerable latitude in ruling on the admissibility of evidence and his rulings will not be disturbed absent a showing of probable prejudice.” (citation omitted)).
*600 Conclusion
Based on the foregoing, Appellant’s conviction for high and aggravated breach of the peace and resulting sentence are
AFFIRMED.
BEATTY AND KITTREDGE, JJ., concur.
PLEICONES, J., dissenting in a separate opinion in which HEARN, J., concurs.

. Because this appeal involves Appellant’s motion for directed verdict, we view the evidence in the light most favorable to the State. See, e.g., State v. Walker, 349 S.C. 49, 53, 562 S.E.2d 313, 315 (2002).

. Shop Road is one of several major thoroughfares leading in and out of Williams-Brice Stadium. In addition to providing access to the stadium, thousands of people park their vehicles, tailgate, and walk to and from the stadium along Shop Road during football games.

. The dissent would find that Appellant cannot be convicted of a high and aggravated breach of the peace under South Carolina law because the specific language used in the indictment is not found in our criminal law, and where such crime is listed elsewhere in South Carolina law as "aggravated breach of peace” or just "breach of the peace.” See, e.g., State v. Mason, 108 S.C. 410, 94 S.E. 870 (1918) (affirming a conviction for “aggravated” breach of the peace).
We begin by noting the points of our analysis on which the dissent agrees. First, the dissent agrees that the crime of breach of the peace is a creature of the common law. Second, the dissent agrees that section 22-5-150 directs that some breach the peace offenses should be tried in the Magistrate's Court and others should be tried in circuit court due to their high and aggravated nature.
Because we agree on these fundamental points, then all that remains — its convoluted analysis notwithstanding' — is that the dissent simply opposes the indictment's reference to Simms’s crime as a "Breach of Peace — High'and Aggravated.” Thus, our entire disagreement is a matter of semantics. Where the dissent would find the State *597 was creating (and we are now sanctioning) an entirely new crime, we find that by including the requisite jurisdictional language of "high and aggravated” in the indictment, the State was merely providing Simms with notice of the crime for which it sought to prosecute him in circuit court — a breach of the peace that was aggravated, or serious enough, to be "waived up.” State v. Gentry, 363 S.C. 93, 102, 610 S.E.2d 494, 499-500 (2005) ("The indictment is the charge of the state against the defendant, the pleading by which he is informed of the fact, and the nature and scope of the accusation.... The indictment is a notice document.” (quoting State v. Faile, 43 S.C. 52, 59-60, 20 S.E. 798, 801 (1895), overruled on other grounds by State v. Torrence, 305 S.C. 45, 406 S.E.2d 315 (1991))).
At the end of the day, the dissent's complicated analysis is undermined by faulty logic. We do not understand how the majority can be charged with creating a new crime when the dissent agrees that the crime for which Simms was prosecuted already exists. Furthermore, the adoption of the dissent’s analysis would produce the absurd result that simple breaches of the peace may be prosecuted in South Carolina, but serious breaches of the peace may not.