**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

George N. Moses, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2020-000093

---

**ON WRIT OF CERTIORARI**

---

Appeal from Orangeburg County
Edgar W. Dickson, Circuit Court Judge

---

Opinion No. 6041
Heard November 16, 2023 – Filed January 3, 2024

---

**AFFIRMED**

---

Appellate Defender Jessica M. Saxon, of Columbia, for
Petitioner.

Attorney General Alan McCrory Wilson and Senior
Assistant Attorney General Mark Reynolds Farthing,
both of Columbia, and Solicitor David Michael Pascoe,
Jr., of Orangeburg, all for Respondent.

---

**GEATHERS, J.:** Petitioner George N. Moses appeals the December 16, 2019
denial of his application under the Access to Justice Post-Conviction DNA Testing

Act (the DNA Testing Act),[1] in which he sought post-conviction DNA testing of evidence used to convict him of voluntary manslaughter and armed robbery in February 2009.  Moses argues the circuit court erred by relying on the incorrect part of the statute and misapplying the statutory factors used to review his application.  We affirm.

## FACTS

George Moses was convicted of voluntary manslaughter and armed robbery and sentenced to life without parole on February 12, 2009, for the killing of Harry Livingston (the victim).  On September 29, 2006, Moses visited the victim to purchase drugs.  A fight broke out between the two surrounding the terms of the exchange and resulted in Moses stabbing and hitting the victim with a stick until the victim passed out.  The victim was subsequently found dead, and an autopsy attributed his death to a closed-head injury and subarachnoid hemorrhaging.  After the altercation, Moses went to a friend's house and hid a pair of bloody shorts, which police later found.  A grand jury indicted Moses for armed robbery and murder.  At trial, Moses admitted to the altercation with the victim and argued that he acted in self-defense.  DNA testing of several pieces of evidence, including strips cut from the bloody shorts Moses stashed after his fight with the victim, did not reveal Moses' DNA.

Moses filed an application under the DNA Testing Act on January 3, 2017, requesting that the State perform a DNA test on two other items: swabs taken from the pockets of the pair of shorts he admitted to hiding and fingernail clippings taken from the victim.  Moses alleged that testing these items would reveal the true identity of the person wearing the shorts and the identity of the person who actually killed the victim.[2]

---

[1] S.C. Code Ann. §§ 17-28-10 to -120 (2014 & Supp. 2023).

[2] At oral argument, Moses' counsel explained that Moses was likely confused by the fact that multiple DNA swabs were taken from the bloody shorts and that Moses thought that there were two pairs of shorts somehow involved in the State's case.  Because Moses admitted at trial that he was wearing the bloody shorts of which he now seeks DNA testing, counsel explained that the focal point of Moses' case was testing the victim's fingernail clippings, which he asserts could potentially show that an interceding actor caused the victim's death.

Moses' application sat pending for over two years, apparently owing to confusion over how the application was to be handled. On August 28, 2019, the circuit court held an evidentiary hearing in which Moses' counsel began by advising the court he had been unable to verify that the items for which testing was sought still existed.[3] The parties then spent most of the hearing arguing whether identity was a critical factor at Moses' trial. On this point, Moses argued that DNA evidence from the shorts and the victim's fingernails would reveal that the victim had been in another altercation after his fight with Moses. The State argued Moses' testimony at trial that he engaged in an altercation with the victim before his death and that he stashed the bloody shorts at a friend's house precluded a finding that identity was an issue during the trial.

After taking the parties' arguments under advisement, the circuit court issued an order on December 16, 2019, denying Moses' application. Moses concedes on appeal that no objections were raised at the hearing nor was the circuit court asked to reconsider its order. Indeed, Moses reads the record as making clear "that everyone involved, from [Moses'] DNA counsel to the [s]olicitor to the circuit court[,] did not properly address [Moses'] DNA application." Moses sought certiorari from this court pursuant to Rule 247(a), SCACR,[4] and this court granted the petition on June 16, 2021.

## ISSUE ON APPEAL

Did the circuit court err in finding Petitioner failed to meet the requirements of section 17-28-40(C) of the South Carolina Code, which enumerates the required contents of the DNA testing application, rather than the requirements of section 17-28-90(B), which specifies the factors to be proved at the hearing on the DNA testing application?

---

[3] Under the DNA Testing Act, applicants have the burden of showing the items for which testing is sought still exist. § 17-28-90(B) ("The court shall order DNA testing of the applicant's DNA and the [evidence] . . . upon a finding that the applicant has established each of the . . . factors by a preponderance of the evidence[.]").

[4] Rule 247(a), SCACR, provides: "A final order of the circuit or family court denying or granting DNA testing under the . . . DNA Testing Act . . . shall be reviewed upon petition of either party for a writ of certiorari according to the procedure set forth in this rule."

## STANDARD OF REVIEW

Section 17-28-90(G) of the South Carolina Code provides that both the State and the applicant have a right to appeal a final order granting or denying an application under the DNA Testing Act. Our research has revealed no published appellate court decision defining the standard of review for such appeals. Applications under this statute are in some ways similar to applications seeking post-conviction relief (PCR) under the Uniform Post-Conviction Procedure Act (the PCR Act).[5]

However, whereas the PCR Act provides that "[a]ll rules and statutes applicable in *civil* proceedings are available to the parties," the DNA Testing Act provides that "[a]ll rules and statutes applicable in *criminal* proceedings are available to [the parties]." *Compare* § 17-27-80 (emphasis added), *with* § 17-28-90(A) (emphasis added). This key difference between the two acts justifies applying the standard of review for criminal proceedings to the present case. "In criminal cases, the appellate court sits to review errors of law only." *State v. Elwell*, 403 S.C. 606, 609, 743 S.E.2d 802, 804 (2013). "Therefore, this [c]ourt is bound by the trial court's factual findings unless the appellant can demonstrate that the trial court's conclusions either lack evidentiary support or are controlled by an error of law." *Id.*

## LAW AND ANALYSIS

The State contends that Moses' arguments are unpreserved while Moses asks this court to relax preservation rules to reach the merits of his claims. We agree with the State and hold Moses' arguments on appeal are not preserved for appellate review.

South Carolina appellate courts do not follow the "plain error" standard when sitting in review of a trial court's decision. *State v. Sheppard*, 391 S.C. 415, 421, 706 S.E.2d 16, 19 (2011) ("[T]he plain error rule does not apply in South Carolina state courts."). "Instead, a party must have a contemporaneous and specific objection to preserve an issue for appellate review." *Id.* "[I]t is a litigant's duty to bring to the court's attention any perceived error, and the failure to do so amounts to a waiver of the alleged error." *State v. Geer*, 391 S.C. 179, 193, 705 S.E.2d 441, 448 (Ct. App. 2010) (quoting *S.C. Dep't of Transp. v. First Carolina Corp. of S.C.*, 372 S.C. 295, 301, 641 S.E.2d 903, 907 (2007)). However, appellate courts are to be "'mindful of

---

[5] S.C. Code Ann. §§ 17-27-10 to -160.

the need to approach issue preservation rules with a practical eye and not in a rigid, hyper-technical manner'" and thus should not apply preservation rules in a manner that "elevat[es] form over substance to trap trial lawyers so as to prevent the appeal of a legitimate issue." *State v. Morales*, 439 S.C. 600, 609, 889 S.E.2d 551, 556 (2023) (quoting *Herron v. Century BMW*, 395 S.C. 461, 470, 719 S.E.2d 640, 644 (2011).

"One primary purpose of our issue preservation rules is to 'give the trial court a fair opportunity to rule.'" *Id.* (quoting *Atl. Coast Builders & Contractors, LLC v. Lewis*, 398 S.C. 323, 329, 730 S.E.2d 282, 285 (2012)). Second, preservation rules work to ensure that "both parties are aware of the nature of the objection such that they may present their best arguments addressing *that* objection." *Id.* Our supreme court has assessed requests to set aside preservation in the interest of justice against both of these high-level goals. *See id.* (noting that the court's refusal to ignore issue preservation rules "serves each [of the two aforementioned] purposes").

Moses asks this court to analyze the merits of his appeal, regardless of whether the issues are preserved, in the interest of justice. To support this, Moses cites state and federal case law supporting the proposition that at times, "the interests of justice require . . . courts to be flexible with procedural requirements before . . . applicants suffer procedural default on substantial claims." *Mangal v. State*, 421 S.C. 85, 99, 805 S.E.2d 568, 575 (2017).

In *Simmons v. State*, our supreme court took the "extraordinary action" of remanding a PCR case to the lower court even though it found "the State [was] technically correct" that the applicant's issue on appeal was not preserved. 416 S.C. 584, 592–93, 788 S.E.2d 220, 225 (2016). It noted that "[a] remand under these circumstances must . . . be granted sparingly and be reserved for the *rarest of cases*." *Id.* at 593, 788 S.E.2d at 225 (emphasis added). The applicant in *Simmons* had been sentenced to death for murder and filed a PCR application, asserting ineffective assistance of counsel, newly discovered evidence, and a claim that he was deprived of due process by the State's presentation of false DNA evidence to the jury and its failure to disclose exculpatory evidence. *Id.* at 589, 788 S.E.2d at 223. The PCR court vacated the applicant's death sentence and denied the remaining claims, including the challenge to the DNA evidence. *Id.* at 591, 788 S.E.2d at 224. On appeal, the State did not deny that "the strength of the State's DNA evidence against [the applicant] was misrepresented to the jury," but our supreme court noted that it found "no evidence of conscious wrongdoing in the prosecution of [the] case." *Id.* Instead, it attributed the misrepresentation to faulty evidence the State had received "concerning a complex matter." *Id.* Finding that the PCR court did not make

specific findings of fact, our supreme court vacated the PCR court's order in part and remanded it for further factual findings. *Id.* at 592–93, 788 S.E.2d at 225.[6]

*Simmons* and similar cases cited by Moses are distinguishable from the instant case. Whereas in *Simmons*, the PCR court failed to make sufficient factual findings required of it by the law, Moses makes no allegation here that the circuit court did not make the factual findings required of it under the DNA Testing Act. Rather, Moses essentially argues the circuit court erred by deriving the factors it applied from the wrong part of the DNA Testing Act.[7] Only under extraordinary circumstances—such as when a PCR court fails to make sufficiently specific findings of fact—do the interests of justice permit a court to reach unpreserved issues. *See Fishburne v. State*, 427 S.C. 505, 517, 832 S.E.2d 584, 590 (2019) (Hearn, J., concurring) ("Although we have overlooked the lack of a [posttrial] motion in the past, . . . those decisions clearly represent extraordinary circumstances. Our issue preservation rules are well-settled. [We depart] from [these rules] only in exceptional circumstances.").

Softening preservation rules for Moses' claim would be tantamount to employing the plain error rule. Although—as discussed—our jurisprudence sometimes permits reaching unpreserved issues to avoid hyper-technical applications of preservation rules, the case at hand is not one in which preservation

---

[6] *Simmons* is in the same vein as a line of cases stemming from *McCray v. State*, 305 S.C. 329, 408 S.E.2d 241 (1991). In *McCray*, our supreme court took the opportunity to remind PCR courts of their obligation to "make specific findings of fact, and state expressly [their] conclusions of law, relating to each issue presented." 305 S.C. at 330, 408 S.E.2d at 241 (quoting S.C. Code Ann. § 17-28-80). Finding that "[t]he PCR court's conclusions regarding ineffective assistance are insufficient for appellate review and fail to meet the standard set forth in the statute," our supreme court remanded the case. *Id.* A year later, in *Pruitt v. State*, our supreme court expressed "concern with the increasing number of orders in PCR proceedings that fail to address the merits of the issues raised by the applicant" and vacated and remanded the case to the PCR court for additional findings. 310 S.C. 254, 255–56, 423 S.E.2d 127, 128 (1992) (per curiam).

[7] Specifically, Moses argues the circuit court relied on section 17-28-40(C), which sets out factors for evaluating an *application* under the DNA Testing Act, instead of section 17-28-90(B), which specifies the factors to be applied to a *hearing* held under the DNA Testing Act.

rules must be tortured or even construed strictly in order to function as a bar to Moses' claim.  Rather, Moses did not object during the DNA testing hearing.  In short, the issues Moses brings on appeal were neither raised to nor ruled on by the circuit court.  *Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review.").  The State had no opportunity to address any of the arguments about the circuit court's order that Moses makes on appeal because this appeal is the first time he has raised them.  The same can be said about the circuit court.  *See Queen's Grant II Horizontal Prop. Regime v. Greenwood Dev. Corp.*, 368 S.C. 342, 373, 628 S.E.2d 902, 919 (Ct. App. 2006) ("Issue preservation rules are designed to give the trial court a fair opportunity to rule on the issues, and thus provide us with a platform for meaningful appellate review.").  Thus, Moses failed to preserve the errors he assigns for appellate review and no extraordinary circumstances warrant this court to set aside preservation rules and reach the issues.

## CONCLUSION

For the foregoing reasons, the circuit court's order is

**AFFIRMED.**

**THOMAS and KONDUROS, JJ., concur.**