### 24424

The STATE, Petitioner v. Willie Lee BALLENGER, Respondent.

(470 S.E. (2d) 851)

Supreme Court

*Charles Molony Condon, Attorney General, John W. McIntosh, Deputy Attorney General, Salley W. Elliott, Assistant Deputy Attorney General, Rakale Buchanan Smith, Assistant Attorney General, Caroline C. Callison, Assistant Attorney General,* Columbia, *for petitioner.*

*Robert M. Pachak, Assistant Appellate Defender,* of *South Carolina Office of Appellate Defense,* Columbia, *for respondent.*

Heard Oct. 3, 1995.

Decided May 13, 1995.

WALLER, Justice:

Respondent Willie Lee Ballenger was convicted of possession with intent to distribute crack cocaine. The Court of Appeals reversed his conviction, finding the trial judge should have directed a verdict of acquittal. *State v. Ballenger,* 317 S.C. 364, 454 S.E. (2d) 355 (Ct. App. 1995). We reverse.

## FACTS

On July 27, 1992, Lieutenant Blackburn of the Greenville City Police Department received complaints that two black males were selling crack on the corner of Grace and McCall streets, a known drug distribution area. One was described as wearing a white tee shirt and black pants.[1] Blackburn radioed the vice and narcotics unit to investigate. Two units responded: Detectives Bowser and Hawkins, and Detectives Kelly and Brown.

As Detectives Bowser and Hawkins approached the intersection of Grace and McCall they saw two black males, one of them (Ballenger) fitting the description given. Bowser, who was not driving, stated Ballenger appeared to be involved in a drug transaction when he saw the officers (driving an unmarked police car). Ballenger appeared to put something into his pocket; he then ran between two houses. Bowser, pursuing Ballenger on foot, saw him cross two fences but did not catch up with him until Detective Kelly had him in custody. Detective Hawkins never saw Ballenger until he had been caught.

---

[1] Defense counsel argued the suspect was also described as wearing a red ball cap, but only Detective Brown testified he remembered it.

Detective Kelly (who was attempting to intercept Ballenger) saw him hurdle a fence and fall face down on the ground, about three feet away from the fence. He caught Ballenger when he became entangled in a barbwire fence. Ballenger began screaming hysterically, "I've been robbed."

Detective Brown found twenty-nine hits of crack (weighing 3.26 grams), wrapped in newspaper. It was about five feet from the fence Ballenger scaled, laying on top of the ground, in the spot where Detective Kelly said Ballenger had fallen.[2] When Brown showed the crack to Ballenger and stated he was under arrest, he tried to get away.

At the close of the state's case, Ballenger moved for a directed verdict, which he renewed once all evidence had been presented. After conviction he moved for judgment notwithstanding the verdict or in the alternative a new trial. The trial judge denied all motions.

## ISSUES

Was there sufficient evidence Ballenger had possession of crack cocaine to justify the trial judge's denial of Ballenger's motion for a directed verdict?

## DISCUSSION

In considering whether the trial judge erred in denying a motion for a directed verdict, this court must view the evidence in the light most favorable to the

---

[2] Regarding the dissent's argument that we stated "the bag was found in the exact spot where Ballenger landed," we clearly have made no such representation. Rather, we have merely recounted Detective Brown's testimony as given at trial:

Q: Okay. About how far away from the fence were you when you found it? You can take the stand again.
A: I would say about five feet maybe.
Q: That's about how far the substance was from the fence?
A: Yes, ma'am.
Q: Okay. How long did you look?
A: I looked—I mean, it was within a minute, a minute's time.
Q: Did you just randomly look up and down the fence?
A: No, ma'am. I went to where Mr. Ballenger was observed by Detective Kelly jumping the fence. And where he fell, Detective Kelly directed me *to that spot and that's where I found it*—.

(Emphasis added.) The dissent also states that Detective Bowser was the officer who told Detective Brown where Ballenger had scaled the fence. Detective Bowser testified he did not see Ballenger cross the second fence at all; it was Detective Kelly who informed Detective Brown where Ballenger had fallen.

State. *State v. Brown,* 267 S.C. 311, 227 S.E. (2d) 674 (1976). In *State v. Littlejohn,* 228 S.C. 324, 329, 89 S.E. (2d) 924, 926 (1955), the court set forth the standard by which a trial judge should measure circumstantial evidence on a directed verdict motion.

> ... [T]he trial judge is concerned with the existence or non-existence of evidence, not with its weight; and, although he should not refuse to grant the motion where the evidence merely raises a suspicion that the accused is guilty, it is his duty to submit the case to the jury if there be any substantial evidence which reasonably tends to prove the guilt of the accused, or from which his guilt may be fairly and logically deduced.

The motion should be granted where a jury would be speculating as to the accused's guilt, *Brown,* 267 S.C. at 316, 227 S.E. (2d) at 677, or where the evidence is sufficient only to raise a strong suspicion of guilt. *State v. Totherow,* 263 S.C. 275, 210 S.E. (2d) 228 (1974). However, a trial judge is not required to find that the evidence infers guilt to the exclusion of any other reasonable hypothesis. *State v. Edwards,* 298 S.C. 272, 379 S.E.(2d) 888, *cert. denied,* 493 U.S. 895, 110 S.Ct. 246, 107 L.Ed. (2d) 196 (1989).

Possession is an essential element of the crime of possession with intent to distribute narcotics. S.C. Code Ann. § 44-53-375(B) (Law. Co-op. Supp. 1994). Possession may be actual or constructive. "Actual possession occurs when the drugs are found to be in the actual physical custody of the person charged with possession, while constructive possession occurs when the person charged with possession has dominion and control over either the drugs or the premises upon which the drugs are found." *State v. Ellis,* 263 S.C. 12, 22, 207 S.E. (2d) 408, 413 (1974); *State v. Mollison,* 319 S.C. 41, 459 S.E. (2d) 88 (Ct. App. 1995).

While Ballenger did not have physical custody of the drugs when he was caught, the state's case hinged on proving actual possession.[3] Circumstantial evidence

---

[3] Apparently Ballenger focused his argument to the Court of Appeals on lack of constructive possession, although that court addressed both types of possession in its opinion. However, the constructive possession theory is not applicable here, a fact which the solicitor admitted at trial.

may be used to prove actual possession. *See, e.g., Ellis,* 263 S.C. at 22, 207 S.E. (2d) at 413; *State v. Bowers,* 301 S.C. 457, 392 S.E. (2d) 482 (Ct. App. 1990). Mere presence is insufficient to establish possession. *Mollison,* 459 S.E. (2d) at 91.

In deciding there was insufficient evidence of actual possession, the Court of Appeals focused on the following evidence: no one saw Ballenger toss anything; no one saw anything fall out of his pocket; there was no elaboration of what Bowser meant in stating Ballenger appeared to be involved in a drug transaction; and Bowser could not positively describe what Ballenger put in his pocket. This is not the only evidence that *existed* as to Ballenger's guilt. There is no mention, for example, of Ballenger's flight, which is at least some evidence of guilt. *See State v. Grant,* 275 S.C. 404, 272 S.E. (2d) 169 (S.C. 1980) (while a jury charge on flight as evidence of guilt is improper, admission of evidence and argument by counsel concerning it are allowed). Nor is there mention of the considerable drug profile testimony given at trial.

Viewing all of the evidence in the light most favorable to the state, we find sufficient evidence to allow Ballenger's guilt to be fairly and logically deduced. Ballenger matched the description the police were given. He seemed to be involved in a drug transaction. When he saw the unmarked police car, he seemed to put something in his pocket and ran. Several detectives testified they had years of experience with drug trade in the area and they had never found drugs in the specific area where Ballenger was arrested and this crack was found. There was testimony that drug dealers normally stood on the corner of Grace and McCall streets. While the area was known as one of high drug distribution, and the detectives testified drug sellers often put drugs on the ground, they were always hidden and within the visibility of the seller. Otherwise the drugs would be picked up by the users in the area. It was uncontested that no other people were outside at the time this incident occurred. The crack was found laying on the ground out in the open, in the location where Ballenger fell.

We find the Court of Appeals impermissibly weighed the evidence instead of determining whether sufficient evidence existed as to Ballenger's guilt. Therefore, its decision is reversed and Ballenger's conviction is reinstated.

Reversed.

TOAL, MOORE and BURNETT, JJ., concur.

FINNEY, C.J., dissenting in separate opinion.

FINNEY, Chief Justice:

I respectfully dissent, and would affirm the holding of the Court of Appeals that Ballenger was entitled to have his motion for a directed verdict granted.

A close reading of the record convinces me that the Court of Appeals read it correctly. Detective Bowser retraced his chase of Ballenger, and found no cocaine. He then pointed out to Detective Brown the spot where Ballenger had scaled the fence. After going to that spot, Detective Brown looked around, and in about a minute spotted the bag containing cocaine lying approximately five feet from the fence. The majority opinion of this Court misreads the record when it states the bag was found in the exact spot where Ballenger landed.

Furthermore, the majority relies upon "drug profile testimony" and testimony that Ballenger **appeared** to be involved in a drug transaction and that he ran when he saw the unmarked police car approaching. While such evidence may raise a *suspicion* of guilt, "mere suspicion alone is insufficient to send the case to the jury." *State v. Barksdale*, 311 S.C. 210, 428 S.E. (2d) 498 (Ct. App. 1993). In my opinion, the record reflects no substantial evidence that Ballenger ever possessed this cocaine, and therefore was entitled to have his directed verdict motion granted. *State v. Kimbrell*, 294 S.C. 51, 362 S.E. (2d) 630 (1987); *State v. Edwards*, 298 S.C. 272, 379 S.E. (2d) 888 (1989).

I am persuaded that the Court of Appeals has correctly applied the law to the facts of this case. Therefore, I would affirm.